UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                                    Case No.: 8:12-cv-1210-T35-MAP

MARK A. LEFKOWITZ, COMPASS
CAPITAL GROUP, INC., MARK A. LOPEZ,
UNICO, INC.,STEVEN R. PEACOCK,
SHANE H. TRAVELLER, and ADVANCED
CELL TECHNOLOGY, INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Motion to Transfer Venue (Dkt. 72) filed by Defendant Mark A. Lopez; the Response in Opposition thereto (Dkt. 76) filed by the Securities and Exchange Commission ("SEC"); and the Notice to join Defendant Mark A. Lopez's Motion to Transfer Venue (Dkt. 81) filed by Defendants Unico, Inc., Steven R. Peacock, and Shane H. Traveller. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** the Motion to Transfer.

I.  **BACKGROUND**

The SEC brought this action against seven Defendants for the distribution of billions of shares of penny stocks through the alleged misuse of the exemption from registration provision contained in Section 3(a)(10) of the Securities Act of 1933 ("Securities Act"). Section 3(a)(10) provides a narrow exception to the registration

1

requirement of the federal securities laws. Pursuant to Section 3(a)(10), unregistered shares of stock may be issued an exemption if the shares are exchanged for a bona fide debt and if the terms and conditions of the exchange are approved at a fairness hearing by a federal or state court or other authorized governmental authority. 15 U.S.C. § 77c(a)(10). The SEC asserts that Defendants were not entitled to the exemptions from registration they received because the requisites in Section 3(a)(10) were not met. Specifically, the SEC alleges that certain relevant and material terms and conditions of the exchange were not presented at the fairness hearing and the exemption was used not only to cancel a bona fide debt but to raise capital. Consequently, the SEC claims that Defendants violated Securities Act Sections 5(a) and (c), which require non-exempt securities to be registered with the SEC.

According to the SEC, Mark A. Lefkowitz ("Lefkowitz"), a penny stock financier, devised an illegal scheme for penny stock issuers to pay off past due debts while, at the same time, raising additional capital through Section 3(a)(10). The SEC alleges that Lefkowitz introduced his scheme to the following people: (a) Mark A. Lopez ("Lopez"), the chief executive officer of Unico, Inc. ("Unico"), a penny stock issuer; (b) Steven R. Peacock ("Peacock"), a penny stock advisor; (c) Shane H. Traveller ("Traveller"), a penny stock advisor; and (d) William Caldwell IV, the chief executive officer of Advanced Cell Technology, Inc. ("ACT"), a penny stock issuer. According to the SEC, Peacock and Traveller presented Lefkowitz's scheme to other penny stock issuers.

The scheme, according to the SEC, involved a Financier holding or acquiring a past-due debt of a Penny Stock Issuer and seeking to enforce its rights under the debt instrument. Subsequently, a lawsuit would ensue. The Penny Stock Issuer would then

execute a settlement agreement with the Financier, which it agreed to issue unrestricted common stock to the Financier at a substantial discount to the prevailing market price, purportedly to retire the past due debt. Following a fairness hearing held by the Sarasota County Court, a Section 3(a)(10) exemption would be granted, and unrestricted shares would be issued to the Financier. Next, the Financier would quickly sell the shares on the open market to public investors, who were unaware of the dilutive effects of the new stock issuances. The Financier would remit monies to the Penny Stock Issuer, directly or through an intermediary, thus making it a capital-raising transaction for the Penny Stock Issuer.

According to the SEC, this scheme was implemented numerous times. The SEC alleges that from September 9, 2006 through January 29, 2009, more than fifty-eight pre-settled lawsuits were filed in the Circuit Court of the Twelfth Circuit in and for Sarasota County, Florida ("Sarasota Court") under the pretext of settling past-due debts owed by Unico, ACT, or other penny stock issuers to Compass Capital Group, Inc. and several offshore financing entities for whom Lefkowitz was an agent, or Sequoia International, Inc., for whom Peacock was a controlling person and Traveller was an agent.

II. **LEGAL STANDARD**

A motion to transfer venue is governed by 28 U.S.C. § 1404, which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought.

28 U.S.C. § 1404(a). "Section 1404 operates where there are two (or more) forums where a suit could be brought and where it could proceed. . . . Its purpose is to

determine the most convenient forum from among two or more possibly correct ones." Dubin v. U.S., 380 F.2d 813, 816 (5th Cir. 1967).[1]  The decision whether to transfer a case pursuant to §1404 is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion.  Pinson v. Rumsfeld, 192 Fed. Appx. 811, 817 (11th Cir. 2006); Nowell v. Dick, 413 F.2d 1204, 1212 (5th Cir. 1969).

Under § 1404, "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money."  Tampa Bay Storm v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996) (citing Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).  Section 1404(a) is intended to provide for "individualized, case-by-case consideration of convenience and fairness."  Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).  "The movant has the burden of persuading the trial court that transfer is appropriate and should be granted."  Tampa Bay Storm, Inc., 932 F.Supp. at 282.

To determine whether to transfer a case, the court must make a two-pronged inquiry.  First, the court must find that the alternative venue is one in which the plaintiff could have originally brought the action.  28 U.S.C. § 1404(a); see also Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc., 833 F. Supp. 882, 885 (M.D. Fla. 1993).  Second, the court must determine, based on consideration of several factors, that transfer serves the interests of justice and significantly impacts the balance of convenience for the parties and witnesses.  Am. Aircraft Sales Intern., Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347, 1351  (M.D. Fla. 1999).  Generally, the factors to consider under the second

---

[1] Cases decided by the Fifth Circuit Court of Appeals before October 1, 1981 are binding precedent in the Eleventh Circuit today.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

prong include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005).

The plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations. Stewart Org., Inc. v. Ricoh Corp., 47 U.S. 22, 29 (1988). The plaintiff's choice, however, is accorded less weight where the choice of forum lacks any significant connection to the underlying claim. Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).

Here, the Parties do not dispute that the action could have been brought in the Southern District of California. Therefore, the discussion must focus on whether, on balance, the convenience of the Parties and witnesses and the interest of justice weigh in favor of transfer.

III. **DISCUSSION**

Defendant Lopez moves to transfer this case to the United States District Court for the Southern District of California because he contends that the Middle District of Florida is not the appropriate venue. Defendants, Unico, Peacock, and Traveller, join Lopez's Motion to Transfer Venue. Defendants assert that because Lopez and Lefkowitz are both indicted in two separate criminal cases in the Southern District of California for the same conduct implicated in this case and involving legal questions

concerning Section 3(a)(10), the Southern District of California is a more convenient venue. Moreover, the joining Defendants assert that "[i]t makes no sense, and raises the specter of conflicting rulings, for two Judges across the country to be asked to rule on the same esoteric issues on the same facts." (Dkt. 81 at 3)

In response, the SEC asserts that this case was brought in the Middle District of Florida because of Defendants' actions in the Sarasota Court. The SEC contends that the Sarasota Court was at the center of each of the fifty-eight registration violations. According to the SEC, because Defendants found Sarasota, Florida a convenient forum in which to violate the federal securities laws, Defendants should not now argue that the Middle District of Florida is an inconvenient forum. The SEC further contends that this District is a more convenient venue for the witnesses most likely to be called to testify at trial and that the factors analyzed by courts within the Eleventh Circuit do not weigh strongly in favor of a transfer.

In consideration of the relevant factors and based on the facts of the case, the Court finds that the SEC's choice of forum is to remain in the Middle District of Florida as it is not strongly outweighed by the other considerations contained within 28 U.S.C. §1404(a).

1. <u>Convenience of the Witnesses</u>

As to the first factor, convenience of the witnesses, Lopez argues that venue in the Middle District of Florida is inconvenient to potential witnesses as it would require travel by essentially all the key and even secondary witnesses. The SEC refutes Lopez's argument, contending that the Middle District of Florida is convenient for all of the key witnesses. According to the SEC, the key witnesses in this case include: (i)

Robert Turffs (Florida attorney who represented the plaintiffs in all of the lawsuits filed in the Sarasota Court); (ii) Michael Raterink (Florida attorney who represented Unico, ACT, and others in those lawsuits); (iii) employees of the Sarasota Court (including the clerk of the court to explain the motion calendar process and potentially the judges who presided over the Section 3(a)(10) proceedings); (iv) David Cohn and/or Michael Ference of Sichenzia Ross (New York attorneys who interfaced with defendants and drafted some of the papers filed in the Sarasota Court); (v) Lefkowitz (New Jersey); (vi) Hugh O'Neill (Turks & Caicos person who served as the payment "intermediary" alleged in the complaint); (vii) Jody Eisenman (New York investment banker who introduced Lefkowitz and ACT and worked on first ACT Section 3(a)(10) settlement).  The SEC asserts that these potential key witnesses, except for Lefkowitz, do not have any connections with the Southern District of California.  Further, the SEC asserts that these potential key witnesses are those who have direct involvement in the lawsuits that were filed in the Sarasota Court for purposes of obtaining a Section 3(a)(10) exemption.

When considering the availability and convenience of witnesses, the court focuses on the convenience of key witnesses and not the litany of possible witnesses located in various districts.  See Watson v. Cmty. Educ. Centers, Inc., 2:10-CV-00778-36SPC, 2011 WL 3516150, at *4 (M.D. Fla. August 11, 2011)("The analysis of the convenience of the witnesses is not based on which party produces the greater number of witnesses [but] the convenience of the key witnesses."); Mason v. Smithkline Beecham Clinical Laboratories, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001).  In this case, Lopez references the SEC's Rule 26(a)(1) initial disclosures report, noting that the SEC listed 61 specific possible witnesses, many of which are located outside of Florida.

However, Lopez does not clearly specify key witnesses who would be inconvenienced by venue in Florida. Mason, 146 F. Supp. 2d at 1362 ("The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony."). As such, the Court only has before it the key witnesses identified by the SEC, all of which reside in either Florida, New York, New Jersey, or Turks and Caicos. Based on the identified key witnesses' locations and the absence of any connection between the majority of the identified key witnesses and the Southern District of California, the Court finds that the Defendants have failed to show that the Southern District of California is a more convenient venue than the Middle District of Florida. Accordingly, the convenience of witnesses does not support a transfer to the Southern District of California.

  2. Ease of Access to Sources of Evidence

As to the second factor, location and availability of evidence, Lopez argues that Florida has no connection to the relevant documents in this case and that the "accounting, auditing, engineering, corporate and legal documents of Unico are housed or available in California and/or Utah." (Dkt. 72 at 14-15) The SEC rebuts Lopez's argument, contending that the "vast majority (if not all) of the documents that will be used in the case are already available electronically and are easy to transport anywhere." (Dkt. 76 at 15)

In the modern world of computerization and electronic transfer of information, courts have generally found that this factor alone does not warrant transfer of the case. See, e.g., Ivax Corp. v. B. Braun of America, Inc., 00-4909-CIV-KING, 2001 WL 253253, at *2 (S.D. Fla. Feb. 28, 2001) ("In the real world of computerization and

electronic transfer of information, the assemblage of accounting data can be accomplished as easily in Miami, Florida as elsewhere."); <u>Steifel Laboratories, Inc. v. Galderma Laboratories, Inc.</u>, 588 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008).

To the extent that certain documents of Unico are not in electronic form and are physically housed in California or Utah, the Court is confident that in the current world of expedited transfer of information, assembly and production of the necessary information can be accomplished just as easily in the Middle District of Florida as in the Southern District of California.  Further, in absence of Lopez demonstrating that there is any particular difficulty in producing the materials or relevant documents, this factor does not weigh in favor of transfer.

      3. <u>Convenience of the Parties</u>

Next, as to the third factor, convenience of the parties, Lopez argues that California is a more convenient venue than Florida because Defendants Lopez, Unico, and Peacock are located in or near San Diego, California.  Furthermore, Lopez argues that California is a more convenient venue for Lefkowitz.  According to Lopez, because Lefkowitz has appeared already in a court in the Southern District of California for criminal proceedings to address the same conduct at issue in this case, his convenience will be enhanced if this case was consolidated with the criminal proceedings in one judicial district.  In response to Lopez's arguments, the SEC argues that this Court should not give any weight to this factor because Defendants subjected themselves to the jurisdiction of the Sarasota Court at least fifty-eight times.  As such, the SEC contends that Defendants cannot now argue that this District is an inconvenient forum in which to litigate.

Defendants may be inconvenienced by a trial in Florida because they are non-residents. However, if the SEC's allegations are true, these non-resident Defendants from September 9, 2006 through January 29, 2009 on fifty-eight occasions availed themselves of the jurisdiction of the Sarasota Court here in the Middle District of Florida, finding it to be quite convenient for their endeavors. Accordingly, this third factor does not weigh in favor of transfer.

    4. <u>The Locus of Operative Facts</u>

As to the fourth factor, Lopez argues that the locus of operative facts in this case is not Florida, because the SEC's claims do not principally relate to the activities that took place in the Sarasota Court. Lopez avers that the claims in this case involve allegations about communications between Lopez, Lefkowitz, Traveller, and Peacock, which did not occur in Florida, and about Defendants' failure to meet reporting requirements. The SEC contends that contrary to Lopez's characterization of the claims in this case, the Complaint alleges that Defendants issued unregistered shares of securities that did not qualify for any exemption from registration and used the Sarasota Court to accomplish this endeavor. According to the SEC, activities that occurred in Sarasota, Florida lie at the center of this case.

The allegations in the Complaint assert that Defendants appeared fifty-eight times in a Sarasota Court to receive approval of their settlement agreements in order to qualify for the exemption under Section 3(a)(10). It is also alleged that Defendants did not fully disclose material information to the Sarasota Court and, as such, the facts as to what was and was not disclosed during these hearings are pertinent to the claims

against Defendants. Accordingly, this factor weighs in favor of not disturbing the SEC's choice of forum.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

As to the fifth factor, the Parties agree that as a result of the Dodd-Frank Wall Street Reform and Consumer Protection Act, enacted in July 2010 ("Dodd-Frank Act"), all Parties in this proceeding can compel the attendance of unwilling witnesses, regardless of whether this litigation is pending in the Middle District of Florida or the Southern District of California. Lopez, however, contends that a potential trial witness, Hugh O'Neill ("O'Neill"), cannot be compelled to testify at trial because, in a related criminal action pending in California, he is under a material witness pre-trial release order that restricts his travel. The SEC argues that Lopez has misread the pre-trial release order concerning O'Neill and that O'Neill is not as restricted in movement as suggested. The SEC also asserts that, in any event, the parties in this case could potentially intervene to seek a modification of O'Neill's bond conditions if necessary.

Because the Parties are able to compel the attendance of unwilling witnesses in either this District or the Southern District of California and may seek modification of O'Neill's bond conditions, if necessary, this fifth factor is neutral in the transfer analysis.

### 6. The Relative Means of the Parties

As to the sixth factor, relative means of the parties, Lopez argues that he would face "significant financial obstacles" if this case were to remain in Florida because he has "limited and quickly eroding funds with which to defend himself." (Dkt. 72 at 20) Lopez asserts that as a "target" of a criminal investigation in the Southern District of California, he is currently represented by an appointed attorney who is a member of the

2011-2013 Criminal Justice Act Panel based on a showing of indigence. Lopez further argues that "[his] ability to mount a defense against serious allegations by two divisions of the federal government would be considerably compromised by being forced to fight a simultaneous bicoastal battle." (Id.) In addition, Lopez argues that Defendants Traveller and Peacock also would face financial hardship if this case remains in Florida. Lopez asserts that Defendants Traveller and Peacock are proceeding pro se and their ability to defend would be far strengthened if venue were in California because California is where Peacock resides and is where Traveller's principal place of business is located.

In response, the SEC contends that the financial burden that Peacock and Traveller will encounter in litigating this case in Florida as opposed to California is not a relevant consideration. Moreover, as to Lopez, the SEC contends that the conclusory assertion that his funds are eroding is too vague to support a transfer.

Defendants Unico, Peacock, and Traveller, in support of their joinder in the Motion to Transfer, proffer that Defendants Peacock and Traveller are proceeding pro se because of their limited financial means. Defendants Peacock and Traveller assert that "they believe that due to prior business relationships with attorneys in San Diego, they would be more likely to be able to retain counsel if this matter were in San Diego." (Dkt. 81 at 5-6) Moreover, as to Unico, they proffer that the company faces financial problems as it is unable to pay the $51,000 fine assessed in its Deferred Prosecution Agreement and will have to hire and bring "Florida-based lead counsel up to speed [and this] would deprive Unico of its chosen counsel, and would be very expensive." (Id. at 5)

Besides Defendant Unico's Deferred Prosecution Agreement, which stated that Unico could not pay the $51,000 fine, Defendants Lopez, Traveller, and Peacock fail to substantiate their claim that they lack the financial means and abilities to conduct litigation in this District. As a result, this factor slightly weighs in favor of transfer.

7. Forum's Familiarity with the Governing Law

As to the seventh factor, the Court finds that both Districts are equally capable of interpreting and applying the applicable federal law. Thus, this factor is neutral.

8. Weight Accorded the SEC's Choice of Forum

Lopez contends that the SEC's choice of forum should be given little consideration because the operative facts underlying this case did not occur within Florida, the forum chosen.

In the Eleventh Circuit, a plaintiff's choice of venue is generally not disturbed unless that choice is clearly outweighed by other equitable considerations. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Garay v. BRK Electronics, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991).

As discussed above, in this case the key operative facts occurred in a Sarasota Court, giving rise to a strong presumption against disturbing the SEC's forum choice. Accordingly, this factor weighs against transfer.

9. Trial Efficiency and the Interests of Justice

As to the last factor, Lopez argues that trial efficiency and the interest of justice weigh strongly in favor of transfer for four reasons. First, a consolidation of this case

13

with the criminal proceeding in the Southern District of California will promote efficiency. Second, the Middle District of Florida has significantly more pending cases than the Southern District of California; consequently, a transfer of this case will alleviate court congestion. Third, the SEC's allegations that local judges exceeded their jurisdictional authority "may implicate the comity of the federal and state judicial community of Sarasota County, Florida." (Dkt. 72 at 24) Fourth, this Court only has pendent jurisdiction in this case over Claims 2 and 3. The Court is not persuaded that these reasons are sufficient to warrant transfer of this case.

IV. **CONCLUSION**

In sum, after analyzing the relevant factors and based on the facts of the case, the Court finds that the SEC's choice of forum is to remain in the Middle District of Florida as it is not strongly outweighed by the other considerations contained within 28 U.S.C. § 1404(a). Accordingly, it is **ORDERED** that Mark A. Lopez's Motion to Transfer Venue (Dkt. 72), which was joined in by Defendants Unico, Inc., Steven R. Peacock, and Shane H. Traveller (Dkt. 81), is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of September, 2013.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person